# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NDX ADVISORS, INC., NDX CAPITAL MANAGEMENT, LLC, NDX HOLDINGS, INC., and NDX TRADING, INC., ) ) ) ) | |
| Plaintiffs, ) ) | No. 10 C 7019 |
| v. ) ) | Honorable Charles R. Norgle |
| ANDREW BALISTRERI, SHEILA BALISTRERI, SUZANNE BITTROLFF, GERALD BROCHINI, CAROL BROCHINI, VINCENT CANTWELL, LINDA CANTWELL, JACK DARCEY, PATRICIA DARCEY, RAYMOND ELKINS, DOREEN ELKINS, BEULAH FLOOD, JAMES FREDERICK, LINDA FREDERICK, PAULINE GHAZALEH, GARY GILMORE, MICHELLE GILMORE, DUNCAN GRANT, BARBARA GRANT, CATHERINE HANOUM, DARLENE HARRIS, LYNETTE HEIBERT, as Executor of the Estate of Jean Robinson and the Jean Robinson Living Trust, DAVID HINKEL, JOAN HIMES, SHARON ISBELL, JACK JONES, DOROTHY JONES, HOWARD JOHNSON, ALYCE JOHNSON, DONALD KING, PATRICIA KING, ERNEST KINZLI, DIANE KINZLI, GARY LINDQUIST, MAVIS MULLER, HELEN PENNING, JUDITH PERKOWSKI, LARRY ROBERTSON, ANITA ROBERTSON, PAMELA SANDERSON, MARY LOUISE SCHUSTER, RODNEY SEKIMOTO, SHARON SENNING, ANN SOLOMON, FRANK THOMAS, VIRGINIA THOMAS, ROBERT THOMAS, ZELDA THOMAS, SHIRLEY THOMPSON, CARY TREMEWAN, JAN TREMEWAN, ARDETH ULLMAN, CARMEN YASKEWICH, GILBERT YEE, MICHIKO YEE, and IRENE YUNT ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. ) ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the Court is fifty-five individual defendants' (collectively, "Defendants") motion to transfer Plaintiffs NDX Advisors, Inc., NDX Capital Management, LLC, NDX Holdings, Inc., and NDX Trading, Inc.'s (collectively, "Plaintiffs") amended complaint to the Northern District of California pursuant to 28 U.S.C. § 1406(a), or in the alternative § 1404(a). For the following reasons, Defendants' motion is granted in the alternative.

## I. BACKGROUND

On October 10, 2008, Defendants initiated an arbitration claim before a Financial Industry Regulatory Authority ("FINRA") panel in California, alleging fraud (that resulted in the loss of Defendants' retirement funds) and elder abuse against Legent Clearing LLC ("Legent"), Legent Group, TradeRight Corp. d/b/a TradeRight Securities, Inc. ("TradeRight"), Financial Networks Group LLC, and Locke Haven LLC ("Locke Haven"). Defendants' retirement accounts were maintained by Advisory Financial Consultants, Inc. ("AFC"), a small Fremont, California broker-dealer owned by Ruthe P. Gomez ("Gomez"). In July of 2010, Defendants moved to add Plaintiffs to the arbitration proceeding alleging that Plaintiffs are the successor in interest, one and the same, and the alter ego to TradeRight. TradeRight was a securities broker-dealer that executed trades at the direction of its customers or their designated financial advisors. Plaintiffs opposed their inclusion in the arbitration proceeding. Nonetheless, on September 13, 2010, the FINRA panel issued an order adding Plaintiffs as respondents in the arbitration.

Although Plaintiffs are apparently aggrieved by the arbitration ruling in California, they took no further action in California to challenge the ruling. However, on November 1, 2010,

Plaintiffs filed a complaint in this Court seeking declaratory and injunctive relief. Plaintiffs allege that there is no legal basis upon which Plaintiffs can be forced to arbitrate the claims Defendants have brought against them in the California proceeding. Plaintiffs deny that they are alter egos of TradeRight or that they have breached any legal duty owed to Defendants, and deny they are liable for Defendants' losses. Plaintiffs therefore request that the Court declare the respective rights and obligations of the parties. Plaintiffs further allege that there is no underlying agreement between the parties to arbitrate their disputes. On this basis, Plaintiffs seek permanent and injunctive relief, and request that the Court enter an order enjoining Defendants from pursuing claims against them in the California arbitration proceeding or prosecuting any new claims against them "other than in a court of competent jurisdiction." Am. Compl. for Declaratory and Injunctive Relief 12.

On August 5, 2011, the Court *sua sponte* dismissed Plaintiffs' complaint for lack of subject matter jurisdiction. Plaintiffs filed an amended complaint on August 29, 2011, alleging federal question jurisdiction. On September 12, 2011, Defendants filed the instant motion to transfer the case to the Northern District of California pursuant to 28 U.S.C. § 1406(a), or in the alternative § 1404(a). The motion is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

Under § 1406(a), if venue is improper in the district in which a case is filed, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). As relevant here, venue is proper in a federal question (or purported federal question) case in "a judicial district in which a

3

substantial part of the events or omissions giving rise to the claim occurred." Id. § 1391(b).

A district court may also transfer a civil action under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Thus, transfer is appropriate if: (1) venue is proper in both the transferor and transferee district; (2) the transfer is for the convenience of the parties and witnesses; and (3) the transfer is in the interest of justice. Morton Grove Pharms., Inc. v. Nat'l Pediculosis Ass'n, Inc., 525 F. Supp. 2d 1039, 1044 (N.D. Ill. 2007). The moving party bears the burden of demonstrating that "the transferee forum is clearly more convenient." Heller Fin., Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1293 (7th Cir. 1989) (internal quotation marks and citation omitted). Indeed, "[w]here the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer." Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc., 626 F.3d 973, 978 (7th Cir. 2010) (citations omitted). "The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and therefore, is committed to the sound discretion of the trial judge." Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219 (7th Cir. 1986) (citations omitted).

## B. Defendants' Motion to Transfer Pursuant to § 1406(a)

Defendants allege that venue is improper in this District because, in their view, a "substantial part of the events" occurred in California, not Illinois. Defendants assert that their FINRA arbitration is proceeding in San Francisco, California; that fifty-one of the individual defendants opened their securities accounts in California; that meetings regarding the accounts were held in Freemont, California; and that the fundamental misrepresentations and omissions that resulted in the loss of Defendants' retirement funds were made in California. Taking these

events together, it is clear that venue would be proper in the Northern District of California. But this does not necessarily mean that venue is improper in this District.

Venue may be proper in more than one district. In re LimitNone, LLC, 551 F.3d 572, 575 (7th Cir. 2008). Plaintiffs argue that venue is proper in this District because the conduct alleged to have caused Defendants' investment losses occurred here. In the arbitration proceeding, Defendants allege that the fraudulent scheme was motivated by John Lohmeier's ("Lohmeier") need to meet margin calls on an account at Legent, held in the name of a Lohmeier-owned entity, Enterprise Trust Company ("Enterprise"). Defendants contend that Enterprise and TradeRight targeted Defendants and conspired to defraud them. To this end, Defendants allege that, in December of 2006, Locke Haven bought AFC's client accounts on the pretext that Enterprise would act as a custodian of the accounts. Defendants further allege that, through a series of misrepresentations, their accounts were placed solely under the name and control of Enterprise. According to Defendants, Enterprise then commingled the retirement assets in an omnibus account at Legent and engaged in unauthorized margin trading resulting in losses of at least $5,156,400. It is undisputed that Enterprise was located and operated in Oak Brook, Illinois. Yet Defendants appear to argue that because Enterprise was "barred from conducting a trust or fiduciary business, the very business in which it engaged in to accomplish its fraud," Mem. of Points & Authorities in Supp. of Mot. to Transfer 7, that its activity does not constitute a "substantial part of the events." This argument is unavailing. The Court finds that venue is also proper in this District. Accordingly, Defendants' motion to transfer pursuant to § 1406(a) is denied.

## C. Defendants' Motion to Transfer Pursuant to § 1404(a)

In the alternative, Defendants argue that this case should be transferred pursuant to § 1404(a). As discussed above, the Court finds that venue is proper in both this District and the Northern District of California.

### 1. *The Convenience of the Parties and Witnesses*

In evaluating convenience, district courts generally consider: (1) the plaintiff's choice of forum; (2) the availability of and access to witnesses; (3) the parties' access to and distance from resources in each forum; (4) the location of material events; and (5) the relative ease of access to sources of proof. Research Automation, Inc., 626 F.3d at 978; In re Nat'l Presto Indus., Inc., 347 F.3d 662, 664 (7th Cir. 2003).

A plaintiff's choice of forum is typically entitled to substantial weight, "unless the balance is strongly in favor of the defendant." In re Nat'l Presto Indus., Inc., 347 F.3d at 664 (internal quotation marks and citations omitted).[1] Because, on balance, other significant factors strongly favor Defendants, Plaintiffs' choice of forum is not dispositive. See id. Of the fifty-five individual defendants, many of whom are elderly, fifty-one reside in California, two reside in Texas, one resides in New Mexico, and one resides in Colorado. Plaintiffs are Minnesota and Texas corporations. Plaintiffs argue that they would be inconvenienced if this case is transferred

---

[1] A plaintiff's choice of forum may also be afforded less deference where "the plaintiffs' chosen forum is not the plaintiffs' home forum." Plotkin v. IP Axess, Inc., 168 F. Supp. 2d 899, 902 (N.D. Ill. 2001) (citing Bryant v. ITT Corp., 48 F. Supp. 2d 829, 831 (N.D. Ill. 1999)). In a related case, NDX Advisors, Inc. v. Advisory Financial Consultants, Inc., Judge Lindberg determined that because the Northern District of Illinois is not Plaintiffs' home forum, their choice of forum was entitled to less deference. No. 11 C 517, 2011 WL 2200623, at *3 (N.D. Ill. June 6, 2011).

from this District because it would be more difficult for Plaintiff's officers and employees to travel to California than to Chicago. Plaintiffs further argue that, due to their small size and the expense of traveling to California, they would be unable to litigate this case in California. Plaintiffs contend that the inconvenience to Defendants in litigating in this District is "certainly no more than Plaintiffs would face should this case be transferred across [the] country to California." Pls.' Resp. to Defs.' Mot. to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) & § 1406(a), at 13. The Court disagrees. The relative convenience of the fifty-five individual defendants in litigating this case in the Northern District of California outweighs the inconvenience of an admittedly small number of corporate officers and employees. The convenience of the parties weighs heavily in favor of transfer.

The convenience of non-party witnesses also weighs in favor of transfer. Regardless of whether this case is transferred or retained, non-party witnesses will reside more than 100 miles from the presiding court and would therefore be outside of that court's subpoena power. See Fed. R. Civ. P. 45(c)(3)(A)(ii); Jaramillo v. DineEquity, Inc., 664 F. Supp. 2d 908, 915 (N.D. Ill. 2009) (citations omitted). For their part, Plaintiffs identify six non-party witnesses who reside in Illinois. In contrast, Defendants identify seventeen non-party witnesses who reside in California. In evaluating the convenience of non-party witnesses, the Court does not limit its analysis to the number of witnesses located in each district. Moore v. AT & T Latin Am. Corp., 177 F. Supp. 2d 785, 790 (N.D. Ill. 2001) (citation omitted). The Court also looks to the nature and quality of their testimony with respect to the issues in the case. Id. (citation omitted).

Plaintiffs' non-party witness list includes: the appointed Receiver in SEC v. Enterprise Trust Co., No. 08 C 1260 (filed Mar. 3, 2008); TradeRight president Michael Rukujzo

("Rukujzo"); and four other signatories to the contract between Locke Haven and AFC—Lohmeier, Rebecca Townsend ("Townsend"), George Dragel ("Dragel"), and Christopher Wurtzinger. Plaintiffs argue that these witnesses could be compelled to testify about whether Defendants were TradeRight's "customers." It appears that at least some of this testimony would be cumulative. The Court also notes that Rukujzo and Dragel each claim his "dire financial predicament, recent bankruptcy filing and work requirements would not allow [him] to travel to Northern California to testify at a deposition or trial of this matter." Dragel Aff. ¶ 9; Rukujzo Aff. ¶ 21. On this point, if this case is transferred to the Northern District of California, it would be possible for Defendants to subpoena either a deposition or the production of documents from Plaintiffs' non-party witnesses in Illinois, through the appropriate Illinois District Court. See Fed. R. Civ. P. 45(a)(2)(B)-(C); see also CSC Holdings, Inc. v. Redisi, 309 F.3d 988, 993 (7th Cir. 2002) ("A party has a general right to compel any person to appear at a deposition, through issuance of a subpoena if necessary." (citing Fed. R. Civ. P. 30(a)).

Defendants' non-party witness list includes: the former principal of AFC, Gomez; the former directors of AFC, Cathy Berwaldt and Julian Gomez; and fourteen former registered representatives of AFC. According to Defendants, these witnesses will testify about: (1) the transfer of customer accounts, including Defendants' accounts from AFC to TradeRight; (2) the misrepresentations TradeRight made concerning AFC customer accounts; and (3) the July 2009 correspondence from Plaintiff NDX Trading, Inc. stating that it assumed TradeRight's former account relationships. It also appears that at least some of this testimony would be cumulative. Even so, a significant number of non-party witnesses reside in California. Additionally, "Gomez is 86 years old, and presumably would experience some level of difficulty traveling here." NDX

Advisors, Inc., 2011 WL 2200623, at *3. On the whole, the Northern District of California is more convenient to non-party witnesses and therefore weighs in favor of transfer.

The remaining factors are neutral. Relevant evidence in this case is located in both California and Illinois. Plaintiffs argue that the amount of documents in Illinois is at least seventy-five bankers boxes. On the other hand, Defendants contend that there is a considerable amount of documentation in California concerning the accounts at issue—including fifty-one individual defendants' accounts as well as documents in the possession of the seventeen California non-party witnesses. Although Defendants do not quantify the amount of documents in terms of bankers boxes, it is clear that there is a substantial amount of documents located in California. The access to proof factor is therefore neutral. See IP Innovation L.L.C. v. Matsushita Elec. Indus. Co., N0. 05 C 902, 2005 WL 1458232, at *2 (N.D. Ill. June 13, 2005) ("Access to documents or other similar evidence does not particularly favor one venue over the other. Copying and shipping documents do not typically impose a significant burden. All documents necessary to present both sides of the case can easily be transported to either venue."). Further, as discussed above, it appears that the location of material events took place in both California and Illinois. Thus, this factor is also neutral.

On balance, the Court finds that Defendants have met their burden of demonstrating that the Northern District of California is clearly more convenient than this District.

### 2. *The Interest of Justice*

The interest of justice pertains to the "efficient administration of the court system," and is a distinct and "separate element of the transfer analysis." Research Automation, Inc, 626 F.3d at 978 (citing Van Dusen v. Barrack, 376 U.S. 612, 626-27 (1964)). This factor may be

determinative, even where the original forum is inconvenient for the parties and witnesses. Id. (citing Coffey, 796 F.2d at 220-21). Courts evaluate the following factors: (1) "docket congestion and likely speed to trial in the transferor and potential transferee forums"; (2) "each court's relative familiarity with the relevant law"; (3) "the respective desirability of resolving controversies in each locale"; and (4) "the relationship of each community to the controversy." Id. (citations omitted).

Although the docket congestion is higher in this District than in the Northern District of California, the median time from filing to disposition at trial is approximately the same.[2] This factor is therefore neutral. Each court's familiarity with the relevant law is also a neutral factor. Defendants argue that local interest in resolving this controversy in California is of particular importance here.

Specifically, Defendants argue that the interest of justice would be better served by transfer to the Northern District of California because fifty-one residents of California were harmed from the alleged fraud and the arbitration is proceeding there. In response, Plaintiffs argue that this District has a "unique relationship" with the alleged fraud because the SEC brought its action against Enterprise, Lohmeir and Townsend in this District; Enterprise's receiver is located in Chicago; and Interactive Brokers successfully brought its action to enjoin other arbitrations related to Enterprise's fraud in this District.

---

[2] During the twelve-month period ending March 31, 2011, the total number of cases in this District was 7,168, with a median time from filing to disposition at trial of 24.8 months. Federal Court Management Statistics tbl. C-5, at 60, http://www.uscourts.gov/Viewer.aspx?doc= /uscourts/Statistics/FederalJudicialCaseloadStatistics/2011/tables/C05Mar11.pdf. The total number of cases in the Northern District of California was 4,953, with a median time from filing to disposition at trial of 25.3 months. Id. at 61.

Plaintiffs' position, however, is significantly weakened in light of Judge Lindberg's decision to transfer a related case, NDX Advisors, Inc. v. Advisory Financial Consultants, Inc., to the Northern District of California. Because "duplications and possible conflicts between the two district courts could occur" in Plaintiffs' case against Defendants and Plaintiffs' case against AFC and Gomez, the action "should not be split between two districts." FTC v. MacArthur, 532 F.2d 1135, 1143 (7th Cir. 1976); see also Coffey, 796 F.2d at 221 ("[R]elated litigation should be transferred to a forum where consolidation is feasible. (footnote and citation omitted)). The Court finds that the interest of justice would be better served by transferring this case to the Northern District of California.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to transfer this case to the Northern District of California is granted pursuant to § 1404(a).

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: December 30, 2011